THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CATHERINE CARR,

          Plaintiff,

v.

THE BOEING COMPANY, a Delaware
corporation,

          Defendant.

NO.  13-1753 JCC

**DEFENDANT BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
June 6, 2014

## I.  INTRODUCTION

Catherine Carr was a Boeing employee with poor attendance who frequently missed work without giving advance notice to Boeing. Ultimately, she was fired when she missed six consecutive unexcused days of work. She now claims Boeing unlawfully deprived her of leave to which she was entitled under the Family and Medical Leave Act or Washington's Domestic Violence Leave Act. However, Carr had already exhausted her 12 weeks of FMLA for the year, and the six consecutive absences that resulted in her dismissal did not involve any activity by her that is protected under the Domestic Violence Leave Act. Although Carr also claims Boeing failed during those last six absences to accommodate a purported disability, these absences occurred soon after Boeing received a note from her doctor which said she could work full duty without any job modification. Carr's

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

contemporaneous text-message notices to her Boeing supervisor about each such absence said nothing about a disability. In actual fact, Boeing terminated Carr's employment because she had exhausted her FMLA and the six consecutive absences in late 2011 were unexcused. Boeing's decision to terminate Carr's employment is consistent with its policy and practice that employees are discharged if they have six consecutive unexcused absences.

Carr's claims in this action should fail because:

- **FMLA**: Carr's claim was not timely filed and is therefore barred by the applicable statute of limitations. Even if her claim had been timely filed, it should fail because Carr exhausted her 12 week FMLA leave entitlement several weeks before Boeing terminated her employment.

- **Washington's Domestic Violence Leave Act**: Carr admitted at her deposition that she never provided Boeing with advance notice, as required by the Act, for any date on which she purportedly needed domestic violence leave. Carr also admitted she did not engage in any activity that is protected by the Act during any of the six unexcused absences that resulted in her dismissal.

- **Failure-to-Accommodate**: Carr did not inform Boeing that any of her six consecutive unexcused absences were caused by a disability. The only accommodation Carr claims she should have received was *additional time off* after already having exhausted her FMLA leave bank and her Boeing sick-leave bank, and after having missed some or all of more than 150 work days in 2010 and 2011. Such limitless, unpredictable leave is not a reasonable accommodation under applicable law.

For these and the additional reasons set forth below, Boeing respectfully asks the Court to enter summary judgment in its favor on each of Carr's claims.

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 2
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

## II.  STATEMENT OF UNDISPUTED FACTS

**A.    Carr's History of Poor Attendance**

Catherine Carr began working at Boeing in September 2007 as a full-time manufacturing technician. Deposition of Catherine Carr at 59:1-21, attached as Exhibit A to the Declaration of Larry Shapero. She worked the "first shift," which began at 5:00 a.m. Declaration of Tony Benavides at ¶ 4. In 2011 she worked on a team that assembled 787 wings. *Id*. It is critical for manufacturing technicians to maintain regular attendance and be punctual so Boeing can meet customer demand for 787 aircraft. *Id*. at ¶ 5.

Carr had a multi-year history of sporadic attendance at Boeing and would frequently miss work without giving any advance notice to her supervisors. Declaration of Susan Patterson at ¶ 5; Benavides Decl. at ¶ 6. Many of Carr's absences were later approved for medical or other reasons, but other absences were unexcused. Patterson Decl. at ¶ 5.

In March 2011 Boeing gave Carr a Corrective Action Memo ("CAM") because of her poor attendance, but her poor attendance continued. Patterson Decl. at ¶ 6. By mid-October 2011, Carr had missed some or all of more than 100 work days in that year (more than 1 out of every 3 work days), although many of these absences were under the FMLA or were otherwise "excused" under Boeing's policies. *Id*. at ¶ 9.

**B.    Carr Exhausted Her FMLA Leave and Her Boeing Sick Leave Benefits**

Boeing provides its eligible employees with up to 12 weeks of leave each year in accordance with the federal Family and Medical Leave Act (FMLA). *See* Leaves of Absence Policy Handbook at 24, attached as Ex. B to Declaration of Laurence A. Shapero. Boeing calculates FMLA leave on a calendar year basis, providing 12 workweeks of leave between January 1 and December 31. Declaration of Keri Brightbill at ¶ 4; Leaves of Absence Policy Handbook at 24.

Boeing contracts with Aetna Inc. to administer its leave programs through a system called "Boeing TotalAccess." Brightbill Decl. at ¶ 3; Leaves of Absence Policy Handbook at

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 3
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

27, attached as Exhibit B to Shapero Decl. Boeing employees contact Aetna to submit leave requests, and Aetna seeks and collects relevant documents and information, and grants or denies leave requests based on appropriate eligibility criteria. Brightbill Decl. at ¶ 3. Aetna maintains records showing the amount of FMLA leave and other leave that has been used by individual Boeing employees, and provides Boeing with access to leave usage information for each of its employees. Brightbill Decl. at ¶ 3.

In 2010 and 2011 Carr told Aetna she suffered from various ailments for which Boeing granted her leave under the FMLA. Brightbill Decl. at ¶ 5; Patterson Decl. at ¶ 9. This included, for example, three weeks of FMLA leave in April 2011 so Carr could take an extended family vacation to Australia as authorized by her physician. Carr Dep at 272:11 – 273:6; FMLA Approval Letter, attached to the Brightbill Decl. as Exhibit D. In total, Carr used FMLA leave on at least 57 days in 2010 and 64 days in 2011. Brightbill Decl. at ¶ 5. Carr also requested and was granted leave for other reasons under Boeing's various leave programs including, for example, bereavement leave after the death of her step-father's father in September 2011. Carr Dep. at 67:21 – 68:3.

Aetna's records show that Carr exhausted her 12 weeks of FMLA leave for 2011 on October 14. Brightbill Decl. at ¶ 6; Patterson Decl. at ¶ 13. When Carr requested additional FMLA leave after October 14, her requests were denied because she had exhausted her FMLA leave. Brightbill Decl. at ¶ 8. Carr was notified of these denials in a letter dated October 29. Carr Dep. at 69-70; Letter to Carr (Oct. 29, 2011), attached as Ex. S to Brightbill Decl. By October 14, Carr also had also exhausted all of her Boeing paid sick leave benefits. Patterson Decl. at ¶ 11. Because of the attendance CAM she had received in March 2011, Carr was not entitled under Boeing's policies to use her remaining vacation benefits for unscheduled sick-day absences. *Id.*; IAM Collective Bargaining Agreement § 8.4(b)(5), at 40 (Nov. 2, 2008) (attached as Ex. C to Shapero Decl.).

At her deposition, Carr admitted she has no evidence to support her claim that she

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

had any remaining FMLA leave available to her in 2011, and further admitted her FMLA claim is based solely on her subjective belief that she was entitled to additional leave.

**Q:**   Are you aware today whether you exhausted your FMLA?

**Carr:**   No. . . .

**Q:**   So why today are you pursuing a claim that you're entitled to additional FMLA leave?

**Carr:**   Because I was entitled to continuous leave if I was gone for six days, which I was denied.

**Q:**   All right. Do you know what your total allotment of FMLA leave is under the law?

**Carr:**   Twelve weeks.

**Q:**   Do you know if you used twelve weeks of FMLA time during your final year at Boeing?

**Carr:**   I can't be for sure.

\* \* \*

**Q:**   And you testified earlier that you couldn't find anything in that paperwork to support your claim that you still had remaining FMLA. Do you recall that testimony?

**Carr:**   Yes.

**Q:**   So again, what is it, then, that has changed that caused you to file this [FMLA] claim? Was there anything or was it just your belief?

**A:**   My belief.

Carr Dep. at 27:14-16; 31:20-32:4; 96:5-13.

**C.**   **After Exhausting Her FMLA and Sick Leave, Carr Missed Work Because She Did Not Feel Well**

Carr continued to miss work after exhausting her FMLA leave on October 14, 2011.

Benavides Decl. at ¶ 7. Although Carr provided Aetna with a doctor's note dated October 14

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

which said she was able to return to "FULL DUTY without modification" (emphasis in original), Carr missed the next six days of work. Herter Note (Oct. 13, 2011), attached Ex. T to Brightbill Decl.; Benavides Decl. at ¶ 7. After returning to work for one day, she missed the next six work days starting on October 26, 2011. Benavides Decl. at ¶¶ 8-9. Carr sent text messages to notify her supervisor Benavides regarding each of the six absences starting on October 26. Carr Text Messages, attached as Ex. D to Shapero Decl. According to Carr's text messages, the reasons for her absences were as follows:

- October 26: "Can I use a few hours vacation?  Im still really sick, having a hard time breathing." Carr text message at 4:05 a.m. on October 26.

- October 27: "I need to use vacation today . . . I'm running a fever and can barely stand . . ." Carr text messages at 3:58 a.m. and 9:59 a.m. on October 27.

- October 28: "Im using mda.for tomorrow . . . ur threats to fire me and mikes violent outbursts are making it very intimidating to return to wirk . . . Im using family leave instead of mda." Carr text messages 10:41 p.m. on October 27 and 9:47 a.m. on October 28.

- October 31: "Im using family leave 4hrs . . . I'm going to the doctors I wont be in today." [1] Carr text messages at 4:19 a.m. and 8:44 a.m. on October 31.

- November 1: "Im using family leave 4hrs." Carr text message at 4:15 a.m. on November 1.

- November 2: "Im using family leave 4hrs . . . Actually make it 8." Carr text messages at 3:57 a.m. and 5:25 a.m. on November 2.

At her deposition, Carr admitted she stayed home from work on each of these days because she did not feel well enough to go to work. Carr Dep. at 245:5-12, 246:17-247:12, 251:20-252:3, 253:5-15; 253:16-254:4, 254:22-255:3, 255:17-21. Carr also admitted there was nothing in her text messages that would have suggested to Boeing that she had a disability or

---

[1] Although Boeing obtained all of Carr's medical records for 2011, there was no record of Carr visiting a doctor on October 31. Shapero Decl. at ¶ 6. Carr later admitted at her deposition that she could not remember if she actually visited a doctor that day. Carr Dep. at 253-54.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

needed to be absent from work because of domestic violence. Carr. Dep. at 245:5-22, 246:17-251:13, 253:5-15, 254:9-16, 254:17-255:11, 255:17-256:1.

Because Boeing determined that Carr's absences from October 26 through November 2 were not job-protected leave under the FMLA because Carr had already exhausted her 12 weeks of FMLA leave for 2011 nor were the absences excused under Boeing's attendance policies, each of these six consecutive absences was "unexcused" under Boeing's Puget Sound Attendance Guidelines. Benavides Decl. at ¶ 9; Patterson Decl. at ¶¶ 12, 14. Under Boeing's Puget Sound Attendance Guidelines, employees are subject to immediate dismissal after six consecutive unexcused absences and Boeing consistently enforces this policy.[2] *Id*. Boeing therefore terminated Carr's employment on November 2, 2011. Benavides Decl. at ¶ 9; Patterson Decl. at ¶ 14. Benavides tried to contact Carr that afternoon but she did not answer her phone, so he left a voicemail message informing her of her dismissal. Carr Dep. at 91-93. Carr did not retrieve that message for another few days. *Id*.

**D.** **Carr Never Provided Boeing With Advance Notice That She Needed to Take Domestic Violence Leave On Any Specific Date**

Carr claims she told Boeing in June 2011 that she was the victim of stalking from her ex-boyfriend.[3] Carr Dep. at 97:8-19. She says she talked to HR Generalist Sue Patterson, who sat on the board of a women's domestic violence shelter in Snohomish County, and they discussed the requirements for taking leave under Washington's Domestic Violence Leave Act, RCW 49.76. *Id*. at 99:13-102:3. Although Carr admits she was repeatedly told to provide advance written notice of any need to take domestic violence leave, Carr admitted at her deposition that she never provided Boeing with any such advance notice. Carr Dep. at

---

[2] Carr previously had six consecutive unexcused absences starting on October 17 but was not discharged because her supervisor had not yet determined whether these absences were protected by the FMLA. Benavides Decl. at ¶ 7; Patterson Decl. at ¶ 12.
[3] Solely for purposes of this summary judgment motion, Boeing does not dispute these assertions by Carr.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

102:4-104:14; 105:3-106:8; 109:13-17.

**E.      Carr's Union Declined to Grieve Her Dismissal and The NLRB Upheld Union's Decision**

After her dismissal, Carr promptly asked her union, the International Association of Machinists and Aerospace Workers ("IAM"), to file a "grievance" to challenge her dismissal. Carr Dep. at 24-26. After conducting an investigation into the relevant facts, the IAM informed Carr she had exhausted her FMLA leave, her leave was not protected under the Domestic Violence Leave Act, and there was no good faith basis for her proposed grievance. Carr Dep. at 25:18-26:9; *see* IAM email attached as Ex. E to Shapero Decl. The IAM therefore declined to assert a grievance on her behalf. *Id*. Carr then filed an unfair labor practice charge with the National Labor Relations Board in which she claimed the IAM had failed to properly represent her. Carr Dep. at 32-33; *see* NLRB documents attached as Ex. F to Shapero Decl. The NLRB investigated the matter and concurred with the IAM's finding that Carr had exhausted her FMLA leave and, therefore, there was no good faith basis by which to challenge her dismissal. Carr Dep. at 32-35; Ex. F to Shapero Decl.

## III.   ARGUMENT AND AUTHORITIES

**A.      Summary Judgment Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Vasquez v. County of Los Angeles*, 349 F.3d 634, 639-40 (9th Cir. 2003). Mere allegation and speculation by the non-moving party are insufficient to create a factual dispute for purposes of summary judgment. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996).

**B.      Boeing Should Be Granted Summary Judgment on Carr's FMLA Claim**

The Family and Medical Leave Act ("FMLA") provides employees with up to 12

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1   weeks of job-protected leave each year because of the employee's "serious health condition"

2   as that term is defined by the FMLA. 29 U.S.C. § 2612. The FMLA also prohibits an

3   employer from interfering with, restraining or denying an employee's rights under the

4   FMLA. 29 U.S.C. § 2615(a)(1). Carr claims Boeing violated her rights under the FMLA by

5   failing to provide her with the leave to which she was entitled, failing to allow her to return

6   to work after exercising her FMLA rights, and terminating her employment. First Amended

7   Complaint ¶¶ 63-66. Carr's FMLA claims should be dismissed on summary judgment

8   because (1) these claims are barred by the two-year statute of limitations; (2) Carr has

9   admitted she is unable to produce any evidence that she was deprived of any FMLA leave to

10  which she was entitled; and (3) it is undisputed that Boeing terminated her employment for

11  six consecutive unexcused absences that were not connected to her use of FMLA leave.

12  **1.    Carr's FMLA Claim is Barred by the Two-Year Statute of Limitations**

13       The FMLA bars claims for events that occurred more than two years before

14  commencement of an action unless the employer willfully violated the statute, in which case

15  a three-year limitation period applies. 29 U.S.C. § 2617(c). Carr's employment ended on

16  November 2, 2011, which is more than two years before she first asserted her FMLA claims

17  in this lawsuit on December 30, 2013. Consequently, her FMLA claim is barred unless Carr

18  can establish that Boeing willfully deprived her of FMLA rights.

19       The FMLA does not define the term "willful" and the Supreme Court has not

20  expressly defined the term in the context of the FMLA. *Hanger v. Lake Cnty.*, 390 F.3d 579,

21  583 (8th Cir. 2008). Consequently, courts have borrowed the definition applied in the context

22  of the Fair Labor Standards Act (FLSA).  *Id.*; *Henson v. Bell Helicopter Textron, Inc.*, 128

23  F. App'x 387, 393 (5th Cir. 2005); *Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 532

24  (2d Cir. 2004); *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003). Under

25  that definition, an employer acts willfully if "the employer either knew or showed reckless

26  disregard for the matter of whether its conduct was prohibited by the statute." *Hanger*, 390

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1 F.3d at 583. "[A]n employer's general knowledge regarding a statute's potential

2 applicability does not prove willfulness." *Id.* at 584. "If an employer acts reasonably in

3 determining its legal obligation, its action cannot be deemed willful." *McLaughlin v.*

4 *Richland Shoe Co.*, 486 U.S. 128, 135, 108 S. Ct. 1677, 1682 (1988) (clarifying standard in

5 the FLSA context). Even if an employer acts unreasonably in determining its legal

6 obligation, the act is not willful unless it is reckless. *Id.*

7   Carr cannot produce any evidence that would allow a reasonable fact finder to

8 conclude that Boeing showed reckless disregard for the matter of Carr's FMLA leave. To

9 the contrary, the undisputed evidence shows that Aetna, on Boeing's behalf, documented

10 and accounted for Carr's FMLA leave requests and FMLA leave usage. Aetna's and

11 Boeing's FMLA records show that Carr had exhausted her 12 weeks of FMLA leave by

12 October 14, 2011. Carr has admitted she is aware of no evidence to the contrary.[4] Moreover,

13 the IAM independently concluded that Carr had exhausted her FMLA leave, and the NLRB

14 independently concluded that the IAM's investigation into the issue was diligent and

15 appropriate; thereby further reinforcing the assertion that Boeing's analysis was reasonable.

16 Carr Dep. at 25:18-26:9, 32:20-35:12; IAM email attached as Ex. E to Shapero Decl.; NLRB

17 documents attached as Ex. F to Shapero Decl. Carr has not presented any evidence that

18 Boeing's actions were unreasonable, much less reckless. *Cf. Edwards v. Ford Motor Co.*,

19 179 F. Supp. 2d 714, 720 (W.D. Ky. 2001) (holding that claim was time barred where

20 employee had exhausted her leave and the employee presented no evidence that the

21 employer "provided intentionally misleading information or violated the statute concerning

22 [the employee's] FMLA leave determination").

23

24 [4] The only exception, according to Carr, is a purported phone call on an unknown date on
which an unnamed Aetna representative purportedly gave Carr unspecified information that

25 she had an unspecified amount of additional, unused FMLA leave. But when Aetna sent her
documents after this conversation, Carr admitted there was no evidence that she had any

26 remaining FMLA leave. Carr Dep. at 27:17-30:9.

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 10
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1

2

2.      **Carr's Rights Under the FMLA Expired When She Exhausted the Twelve Weeks of Leave Provided under the FMLA**

3

An employee's FMLA rights to leave, reinstatement and job protection expire when

4

the employee exhausts the 12 weeks of leave to which she is entitled under the Act. *See*

5

*Hibbs v. Dep't of Human Res.*, 152 F. App'x 648, 649 (9th Cir. 2005) ("The protections of

6

the FMLA-entitling an employee to return to his job as if he had never left, with equivalent

7

pay, benefits and other terms of employment-do not survive the expiration of the twelve-

8

week FMLA period."); *Jackson v. Simon Prop. Grp., Inc.*, 795 F.Supp.2d 949, 965 (N.D.

9

Cal. 2011) (because plaintiff was not able to return to work at end of 12–week FMLA

10

period, "the FMLA did not entitle Plaintiff to be restored to his former position or to any

11

other position"); *Farina v. Compuware Corp.*, 256 F.Supp.2d 1033, 1054 (D. Ariz. 2003)

12

(plaintiff who took longer than 12–week leave not entitled to reinstatement unless she was

13

prepared to return within the period of FMLA leave allowed); *Lehman v. Maricopa Cnty.

14

Cmty. Coll. Dist.*, CV 11-00579-PHX-FJM, 2012 WL 3638715, at *3 (D. Ariz. Aug. 24,

15

2012) ("An employee is no longer entitled to job protection under the FMLA if she fails to

16

return to work at the expiration of her FMLA eligible leave.").

17

Carr exhausted her FMLA leave by October 14, 2011, several weeks before her

18

employment was terminated for unexcused absences. Brightbill Decl. at ¶¶ 6-8; *see also*

19

IAM and NLRB documents attached as Exs. E & F to Shapero Decl. The burden therefore

20

falls on Carr "to bring forth evidence that she had not exhausted her leave." *Edwards v.

21

Ford Motor Co.*, 179 F. Supp. 2d 714, 718 (W.D. Ky. 2001). Carr admitted at her deposition

22

that her FMLA claim is based on her "belief," but this is not sufficient for her claim to

23

survive summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

24

2007). Summary judgment should therefore be entered in Boeing's favor on Carr's FMLA

25

claim.

26

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 11
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

1    **C.    Boeing Should Be Granted Summary Judgment on Carr's Claims Under
       Washington's Domestic Violence Leave Act[5]**

2        Under Washington's Domestic Violence Leave Act (DVLA), an employee is entitled

3    to take job-protected leave from work only for one of five specific purposes related to

4    domestic violence:

5
                (1) Seek legal or law enforcement assistance or remedies . . . ;
6
                (2) Seek treatment by a health care provider for physical or mental
7            injuries . . . ;

8
                (3) Obtain, or assist a family member in obtaining, services from a
9            domestic violence shelter, rape crisis center, or other social services
             program  . . . ;
10
                (4) Obtain, or assist a family member in obtaining, mental health
11           counseling . . . ; or

12
                (5) Participate in safety planning, temporarily or permanently
13           relocate, or take other actions to increase the safety of the employee . . . .

14   RCW 49.76.030.[6] As a condition for taking such leave, the employee "shall give an

15   employer advance notice of the employee's intention to take leave." RCW 49.76.040(1). An

16   employer who receives a request under the DVLA may require that the request be supported

17   by verification that, among other things, "[t]he leave taken was for one of the purposes

18   described [above]." RCW 49.76.040(2).

19       Carr's claim that Boeing violated the DVLA by terminating her job and failing to

20   grant her leave requests should be dismissed because (1) Carr did not comply with the

21
     _____
22   [5] Plaintiff labels her first two claims under the DVLA as "wrongful discharge" and "failure
     to accommodate" claims. (First Amended Complaint ¶¶ 38-46).  The statute addresses
23   employee discharges in RCW 49.76.120, but the statute does not refer to any
     "accommodation" obligation.  For the purpose of this motion, Boeing assumes the term
24   "failure to accommodate" refers to Boeing's alleged failure to grant "Plaintiff's reasonable
     leave requests . . . in violation of the [DVLA]" as alleged in ¶ 46 of Carr's First Amended
25   Complaint.
     [6] Job-protected leave may also be available to care for family members in certain
26   circumstances, but no such leave is at issue with respect to Carr.

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 12
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

DVLA's advance notice requirements and (2) Carr's text-message notices to Mr. Benavides and her subsequent deposition testimony confirm that none of her six consecutive absences starting on October 26—the absences for which her employment was terminated—were for the activity that is protected by the DVLA.

**1.    Carr Admits She Did Not Comply With The DVLA's Advance Notice Requirement**

> **As a condition of taking leave for any purpose described in RCW 49.76.030**, an employee shall give an employer **advance notice** of the employee's intention to take leave. The timing of the notice shall be consistent with the employer's stated policy for requesting such leave, if the employer has such a policy. When advance notice cannot be given because of an emergency or unforeseen circumstances due to domestic violence, sexual assault, or stalking, the employee or his or her designee must give notice to the employer no later than the end of the first day that the employee takes such leave.

RCW 49.76.040(1) (emphasis added). The DVLA plainly requires advance notice as a condition of taking leave, and must be construed according to its plain meaning. *See Woods v. Kittitas Cnty.*, 162 Wn. 2d 597, 607, 174 P.3d 25, 30 (2007) ("[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."). The Department of Labor's regulations further explain that the employee must provide notice that she specifically intends to take leave under the DVLA: "As a condition of taking foreseeable leave, an employee shall give advance oral or written notice of the employee's intention to take leave **under RCW 49.76.030** and these rules." WAC 296-135-060(1) (emphasis added). Boeing's policy documents reiterate the notice requirement: "It is the employee's responsibility to self report their absence to their manager and/or HR Generalist, providing a written statement outlining the reason for the absence and the expected time away from work." Domestic Violence Overview attached as Exhibit G to Shapero Decl.; *see also* WAC 296-135-060(1)(a) ("If the employer has a stated policy that requires advance notice for foreseeable leave then the employee shall follow that policy.").

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

1
2
3
4
5
6
7
8

Despite the clear command of both the law and Boeing policy, Carr repeatedly admitted at her deposition that she never gave Boeing advance notice of any specific date on which she needed time off for any of the activities that are protected by the DVLA.  Carr Dep. at 74:22-76:7; 102:20-22; 103:20-24; 104:10-14; 105:3-5;  105:6-108:2; 108:12-109:16; 159:16-160:5; 160:14-163:1; 167:10-24; 245:5-22; 246:17-251:13; 254:17-255:7; 255:17-256:1. Because Carr did not satisfy the threshold notice requirement for seeking job protected leave under the DVLA, she cannot reasonably assert that she is entitled to protection under that Act.

9
10

### 2.    Carr Was Not Engaged In DVLA-Protected Activity On the Dates that Resulted In Her Dismissal

11
12
13
14
15
16
17
18
19
20
21
22
23
24

Boeing has presented undisputed evidence that it terminated Carr's employment because she had six consecutive unexcused absences from work between October 26 and November 2, 2011. Benavides Decl. at ¶ 9; Patterson Decl. at ¶ 14. Boeing has also presented undisputed evidence that Carr's dismissal was consistent with its policy and practice to discharge employees who have six consecutive unexcused absences. Benavides Decl. at ¶ 9; Patterson Decl. at ¶¶ 12, 14. Although Carr claims at her deposition that she was entitled to domestic violence leave on these dates (Carr Dep. at 167:14-167:24), she has also admitted that none of these absences were for any of the five, specified activities that are protected under the DVLA. To the contrary, Carr admits that she stayed at home on each of these days because she did not feel well, because she was tired, and because she mostly slept. Carr Dep. at 245:5-12, 246:17-247:12, 251:20-252:3, 253:5-15; 253:16-254:4,[7] 254:22-255:3, 255:17-21. "Not feeling well" is not protected under the DVLA. Carr has therefore admitted that, on each of the six specific absences that resulted in her dismissal, she was not entitled under the DVLA to job-protected domestic violence leave. Summary

25
26

[7] As noted above, Carr could not recall at her deposition whether she visited a doctor on October 31, but medical records confirm there was no such visit.

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

judgment should therefore be entered in Boeing's favor on each of Carr's DVLA claims.

**D.      Boeing Should Be Granted Summary Judgment on Carr's Claim for Failure to Accommodate Under the WLAD**

Carr alleges that Boeing failed to accommodate her severe depression by failing to provide her with leave on the final six days of her employment, the days for which she was discharged for unexcused absences. Carr Dep. at 72-73.[8] The Washington Law Against Discrimination ("WLAD") requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions unless doing so would be an undue hardship. *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145 (2004). To establish a claim for failure to accommodate, Carr must establish, among other things, that she gave Boeing notice of the disability and its accompanying substantial limitations and, upon notice, Boeing failed to affirmatively adopt measures that were available and medically necessary to accommodate the disability. *Id*. Carr's accommodation claim under the WLAD should be dismissed because (1) she failed to provide Boeing with the required notice of her purported disability and (2) if she had requested an accommodation, the requested accommodation would have been unreasonable as a matter of law.

**1.      Carr Did Not Notify Boeing Of Any Purported Disability In Connection With The Unexcused Absences That Resulted In Her Dismissal**

An employer's duty to reasonably accommodate a disability does not arise until the employer is aware of the employee's disability and its corresponding physical limitations. *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wn. 2d 233, 239, 35 P.3d 1158, 1162 (2001). Courts applying the WLAD have held that the employee must make the employer aware of her disability "at the time the employee seeks accommodation." *Williams v. Fed. Exp. Corp.*, C12-0348JLR, 2013 WL 2256227, at *5 (W.D. Wash. May 22, 2013); *see also Hume v. Am.*

---

[8] At her deposition, Carr identified the dates of October 26-29, 2011, but October 29, 2011 was a Saturday on which Carr was not scheduled to work. Carr Dep. at 72-73. From the context, it appears that Carr was attempting to refer to the final days of her employment for which she was terminated because of her absences.

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 15
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

*Disposal Co.*, 124 Wash. 2d 656, 672, 880 P.2d 988, 996 (1994) (affirming dismissal of accommodation claim because there was "no evidence that [the employee] specifically discussed the nature of his condition with his employer at the time he made the requests [for accommodation]"). The employer has no investigatory duty to question the employee "regarding any disability it may have suspected she had." *Williams*, 2013 WL 2256227, at *5. This is particularly true where the employee has provided the employer with a medical form "indicating that she could return to work 'full duty with no restrictions.'" *Id.*

Carr did not provide Boeing with the notice that is required by the WLAD because she did not make Boeing aware of any purported disability in connection with the six unexcused absences that resulted in her dismissal. To the contrary, Boeing had only recently received a note from Carr's primary care physician which specifically stated she was able to work FULL DUTY without any job modification of any kind. Ex. T to Brightbill Decl. And in her text messages to her supervisor regarding these specific absences, Carr said only that she was "sick" or was "having a hard time breathing," or was "running a fever" or could "barely stand." Carr Dep. at 245, 249. Some other text messages on these dates said even less: "Im using family leave 4hrs . . . Actually make it 8." Ex. D to Shapero Decl. No reasonable person could review these text messages and conclude or even suspect that Carr was absent on any of these dates because of a disability, or that she was in need of some sort of accommodation in connection with any such disability. Indeed, Carr admits that there was nothing in her text messages that would have suggested to Boeing that she had a disability. Carr. Dep. at 245:5-22, 246:17-251:13, 253:5-15, 254:9-16, 254:17-255:11, 255:17-256:1. Any subsequent effort to claim that these absences were caused by a disability are of no consequence. *See Hill v. Kansas City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999) (holding that request for accommodation after committing terminable offense was too late under the Americans with Disabilities Act).

DEFENDANT THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT (13-1753) - 16
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1    Because it is undisputed that Boeing had no reason to believe or even suspect that

2    Carr's six unexcused absences between October 26 and November 2 were caused by any

3    sort of disability, there is no reasonable basis by which to assert that Boeing failed to

4    accommodate any such disability or otherwise acted improperly when it terminated her

5    employment for these absences. Summary judgment should therefore be entered in Boeing's

6    favor on Carr's claim to the contrary.

7        **2.    An Employer Need Not Tolerate Sporadic Attendance As An Accommodation**

8        An employer's duty to accommodate only extends to those steps reasonably

9    necessary to enable an employee to perform her job. *Doe v. Boeing Co.*, 121 Wn.2d 8, 18,

10   846 P.2d 531 (1993). Although Washington courts have not discussed "indefinite leave" as

11   an accommodation under the WLAD, Washington courts generally look to federal law to

12   interpret Washington laws with the same purpose as their federal counterparts, and the

13   WLAD serves the same purpose as the Americans with Disabilities Act ("ADA"), both of

14   which are aimed at preventing discrimination on the basis of disability. RCW 49.60.180; 42

15   U.S.C. § 12112; *Clarke v. Shoreline School Dist. No. 412, King County*, 106 Wn.2d 102,

16   118, 720 P.2d 793 (1986). Federal courts applying the ADA have generally held that a

17   request for an indefinite leave of absence is unreasonable as a matter of law. *See Larson v.*

18   *United Natural Foods W. Inc.*, 518 F. App'x 589, 591 (9th Cir. 2013) ("[A]n indefinite, but

19   at least six-month long, leave of absence to permit [the employee] to fulfill . . . treatment

20   recommendations so that he might eventually be physically qualified . . . is not a reasonable

21   accommodation."); *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (requesting an

22   indefinite leave of absence is unreasonable as a matter of law), *cert. denied*, 540 U.S. 982,

23   124 S.Ct. 467, 157 L.Ed.2d 373 (2003); *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th

24   Cir. 1998) ("The ADA does not require an employer to accommodate an employee who

25   suffers a prolonged illness by allowing him an indefinite leave of absence."); *Gantt v.*

26

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 17
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

*Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected.").

Similarly, federal courts applying the ADA have held that employers are not required to modify their attendance or leave policies to tolerate sporadic attendance, particularly for production jobs or other jobs that cannot be worked from home or involve interaction with a team. *See, e.g.*, *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1240 (9th Cir. 2012) ("An accommodation that would allow Samper to 'simply ... miss work whenever she felt she needed to and apparently for so long as she felt she needed to [a]s a matter of law ... [is] not reasonable' on its face."); *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir. 2007) (holding that requested accommodation was not reasonable where employee with depression said she "might miss a day here and there" to address problems with medication); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999) (emphasizing, in case involving a production job that "in most instances the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability"); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."); *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) ("[R]egular attendance is an essential function of most jobs.").

Thus, even if Carr had provided Boeing with notice of a disability in connection with her final six unexcused absences (which she did not), her request for additional leave as an accommodation would have been unreasonable as a matter of law. Carr never indicated to Boeing on any of these six dates that she could return to work within a specified period of time. Moreover, Carr had already missed some or all of more than 100 days of work in 2011, with unpredictable absences occurring throughout the year: 10 absences in January, 4

in February, 11 more in March, 16 in April, 3 in May, 9 in June, 15 in July, 9 in August, 15 in September, 19 in October, and 2 in November before she was terminated at the end of her shift on November 2. Patterson Decl. at ¶ 9. Carr's absences were sporadic and unpredictable, with her doctor revising his assessment of when she was able to work. Brightbill Decl. at ¶¶ 13-14. In mid-October her physician had specifically stated Carr could return to full duty without any work restrictions, yet Carr continued to be absent from work for a variety of purported reasons. Brightbill Decl. at ¶ 9. Carr's requests for leave continued even after Boeing terminated her employment. *Id.* at ¶ 14. Thus, any additional request by Carr for leave would have been for additional indefinite and unpredictable leave, which is never a reasonable accommodation.[9] Summary judgment should therefore be entered in Boeing's favor on  Carr's failure to accommodate claim.

E.      **Boeing Should Be Granted Summary Judgment On Carr's Retaliation Claims**

Carr alleges that Boeing retaliated against her in violation of the DVLA and the WLAD. More specifically, she claims Boeing retaliated against her for taking domestic violence leave and for seeking a disability accommodation when (i) it terminated her employment on November 2, 2011; (ii) Benavides took her off an assignment without reducing her pay or benefits; (iii) Benavides failed to respond to a text message in the way Carr wanted; and (iv) Benavides purportedly falsely accused  Carr of being absent on certain days. Carr Dep. at 76-85, 94.

To support a claim of retaliation under the WLAD, an employee must establish "that (1) she engaged in statutorily protected activity, (2) [the employer] took some adverse employment action against her, and (3) retaliation was a substantial factor behind the

---

[9]  Carr also requested a transfer to a new supervisor, and now claims this was an accommodation request. Carr Dep. at 86:16-87:13. But the Washington Supreme Court has held that employers are not required to change an employee's supervisor as a form of reasonable accommodation. *Snyder v. Med. Serv. Corp. of E. Washington*, 145 Wash. 2d 233, 242, 35 P.3d 1158, 1163 (2001) ("[T]here is no duty under WLAD to reasonably accommodate an employee's disability by providing her with a new supervisor.").

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 19
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington  98154-1192
206.624.3600

adverse employment action." *Washington v. Boeing Co.*, 105 Wn. App. 1, 14, 19 P.3d 1041 (2000). Once the plaintiff presents a prima facie case for retaliation, the burden shifts to the employer to produce admissible evidence that the adverse action was for a legitimate reason other than retaliation. *Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131, 148, 265 P.3d 971, 980 (2011). If the employer meets this burden of production, the employee must produce evidence that the proffered reason for the adverse action is a pretext for retaliation. *Id.* If the employee fails to meet this burden, the employer is entitled to dismissal as a matter of law. *Campbell v. State*, 129 Wn. App. 10, 23, 118 P.3d 888, 894 (2005) (affirming dismissal of retaliation claim because plaintiff could not meet her burden of establishing pretext); *see also Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn. 2d 355, 364, 753 P.2d 517, 521 (1988) (affirming dismissal of discrimination claim because plaintiff did not create a genuine issue of fact that employer's articulated reasons for discharge were a pretext for discrimination).

Washington courts have not yet published opinions analyzing a retaliation claim under the DVLA, which was enacted in 2008, but the statutory language is similar to the long-standing WLAD, which suggests the legislature intended for the same standard to apply. *Compare* RCW 49.60.210(1) ("[I]t is an unfair practice for any employer…to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by [the WLAD] or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.") *with* RCW 49.76.120 ("No employer may discharge, threaten to discharge, demote, deny a promotion to, sanction, discipline, retaliate against, harass, or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee [e]xercised rights under [the provision of the DVLA allowing an employee to take leave for specific purposes]").

Carr's retaliation claims should be dismissed because (1) except for her job termination, the retaliatory actions she alleges do not constitute adverse employment actions as a matter of law; and (2) Carr cannot raise a genuine issue of fact that Boeing's articulated reason for her discharge was a pretext for retaliatory discharge.

**1.     Except For Her Dismissal, The Allegedly Retaliatory Actions Described By Carr Do Not Constitute Adverse Employment Actions As A Matter Of Law**

Under the WLAD, an adverse employment action is "a tangible change in employment status." *Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131, 148, 265 P.3d 971, 980 (2011). It requires something tangible "such as a demotion or adverse transfer, or a hostile work environment that amounts to an adverse employment action." *Kirby v. City of Tacoma*, 124 Wn. App. 454, 465, 98 P.3d 827, 833 (2004) (quoting *Robel v. Roundup Corp.*, 148 Wn.2d 35, 74 n. 24, 59 P.3d 611 (2002)). It must involve a change in employment conditions that is more than an "inconvenience or alteration of job responsibilities . . . . [Y]elling at an employee or threatening to fire an employee is not an adverse employment action." *Kirby*, 124 Wn. App. at 465, 98 P.3d at 833.

Federal courts applying the ADA similarly hold that, "[f]or particular treatment at work to amount to an adverse employment action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Sillars v. Nevada*, 385 F. App'x 669, 670-71 (9th Cir. 2010) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405 (2006)) (affirming dismissal of retaliation claims because no reasonable factfinder could conclude that the employee suffered any conditions that would amount to a materially adverse action).

Assuming Carr experienced the treatment she alleges—being taken off a project, not having her text message responded to in the way she wanted, and being falsely accused of

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 21
4816-0859-3177.11

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

being absent on certain days—these are nothing more than petty slights and minor annoyances that all employees may experience in the work place from time to time, and she cannot reasonably assert that any such action would have dissuaded a reasonable worker from requesting an accommodation or domestic violence leave. Carr admits that the only adverse consequence of being taken off the project involving "inspecting aircraft wings for tubing" was that it upset her. Carr Dep. at 78:9-79:2. She did not experience any reduction in pay or any other adverse consequences. *Id*. Similarly she claims she was upset when Mr. Benavides allegedly failed to read her email, "look into the law" and respond back to her questions, but she has not alleged (and cannot reasonably assert) that this treatment produced a tangible change in employment status. Carr Dep. at 80-83. Mr. Benavides also made a mistake in tracking Carr's attendance and accused her of being absent on two days when she was, in fact, at work—October 11 and October 25, 2011. Carr Dep. at 84. But it is undisputed the mistake was corrected and Carr was paid for her work on those days. Carr Dep. at 257-58. Carr has failed to raise a genuine issue of fact regarding whether any of this treatment changed her employment conditions in a way that amounted to an adverse employment action.

### 2.    Carr Was Terminated Pursuant to Boeing's Consistently Applied Attendance Policy

Boeing has met its burden of production with respect to admissible evidence that Carr's termination was for a legitimate reason other than retaliation. Boeing's policy is to discharge employees if they have six consecutive unexcused absences. Patterson Decl. at 12; Ex. 2 to Patterson Decl. Carr was absent on six consecutive work days without a valid excuse. Patterson Decl. at ¶ 14. Boeing therefore followed its policy and terminated  Carr's employment at the end of the sixth work day. *Id*.

The law requires Carr to produce evidence that the proffered reason for her discharge was a pretext for a retaliatory discharge. *Crownover v. State ex rel. Dep't of Transp.*, 165

Wn. App. 131, 148, 265 P.3d 971, 980 (2011). Carr's claim, however, is based solely on speculation and conclusory allegations, which are not sufficient for her claim to survive a motion for summary judgment. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Carr was terminated under Boeing's consistently applied attendance policy because she had six consecutive days of unexcused attendance. Carr cannot present evidence to establish that (1) Boeing's reason for the termination has no basis in fact; or (2) Boeing's reason for the termination was not the motivating factor in the termination; or (3) Boeing's reason was insufficient to warrant a termination. *See Chen v. State*, 86 Wn. App. 183, 190, 937 P.2d 612, 616-17 (1997) (affirming dismissal of discrimination claims because employee could not show reason for termination was pretext). Because Carr's retaliation claim is not supported by evidence of any kind, summary judgment should be entered in favor of Boeing on this claim.

## IV.    CONCLUSION

Boeing terminated Carr's employment because she missed six consecutive days of work without a valid excuse. Carr had received warnings about her poor attendance and she continued to miss work. It is undisputed that, by the time her employment was terminated, she had missed some or all of more than 100 work days in 2011, had used 12 weeks of FMLA leave, and had exhausted her sick leave. It is also undisputed that Carr did not engage in any activity protected under the DVLA on any of the six unexcused absences that resulted in her dismissal by Boeing. It is undisputed that Carr did not state or suggest to Boeing that she needed to be away from work because of a disability on any of her final six unexcused absences, and that she did not seek any sort of accommodation for any purported disability on any such date. Even if she had provided such notice, her request for additional, unpredictable leave would not have qualified as a reasonable accommodation under the WLAD. Finally, Carr has presented no evidence to support her assertion that her employment was terminated because of some retaliatory motive, and has not presented any

**Riddell Williams P.S.**
1001 Fourth Avenue, Suite 4500
Seattle, Washington 98154-1192
206.624.3600

1   evidence that Boeing's stated reason for dismissal—her six consecutive unexcused

2   absences—was a pretext for retaliation.

3           For these reasons and the additional reasons set forth above, Boeing respectfully asks

4   the Court to enter summary judgment in its favor on each of Carr's claims, and to dismiss

5   this lawsuit, with prejudice, at summary judgment.

6

7           DATED this 15th day of May, 2014.

8                                      s/ Laurence A. Shapero
                                       Laurence A. Shapero, WSBA #31301
9                                      Shata L. Stucky, WSBA #39963
                                       Attorneys for Defendant The Boeing Company
10
                                       RIDDELL WILLIAMS P.S.
11                                     1001 Fourth Avenue, #4500
                                       Seattle, WA 98154
12                                     Phone: 206-624-3600
                                       Fax: 206-389-1708
13                                     Email:   lshapero@riddellwilliacom
14                                              sstucky@riddellwilliacom

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT THE BOEING COMPANY'S MOTION FOR
SUMMARY JUDGMENT (13-1753) - 24
4816-0859-3177.11