THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CATHERINE CARR,<br><br>          Plaintiff,<br><br>     v.<br><br>THE BOEING COMPANY,<br><br>          Defendant. | CASE NO. C13-1753-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 23.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.   BACKGROUND

In September 2007, Plaintiff Catherine Carr was hired by Defendant Boeing as a manufacturing technician in Defendant's facility. (Dkt. No. 16 at 2, ¶ 7.) She worked the "first shift," which began at 5:00 a.m. and continued until 1:30 p.m. (Dkt. No. 27 at 2, ¶ 4.) Starting in 2005, and continuing at least through 2011, Plaintiff was physically and mentally abused by an individual that she dated, and from whom she subsequently separated. (See Dkt. No. 33 at 4–5, Dkt. No. 34 at 1–2, ¶ 3.) Plaintiff also alleges that, at one point, one of her co-workers at Boeing forced Plaintiff onto his lap, bruising her ribs, and had previously verbally harassed her. (Dkt.

1  No. 34 at 2, ¶ 4.)[1]

2        In 2010 and 2011, Plaintiff repeatedly took leave under the Family and Medical Leave
3  Act, as well as leave under various other programs. For instance, in 2010, she used FMLA leave
4  on 57 days, while in 2011 she used FMLA leave on 64 days. (Dkt. No. 25 at 2, ¶ 5.) In 2011, she
5  took over a hundred days of leave, including FMLA leave, on an intermittent basis. (Dkt. No. 26
6  at 3, ¶ 9.) On a number of occasions, she submitted documentation by her doctors to Boeing,
7  stating that she was suffering from depression, anxiety, and—in one case—PTSD. In October
8  2010, for example, Plaintiff's health care provider told Boeing that Plaintiff was suffering from
9  PTSD, depression, and anxiety, as well as a rib contusion. (Dkt. No. 35, Ex. 3.) In March 2011,
10 her physician notified Boeing that she was suffering from "malaise, weight loss, suspect
11 depression." (Dkt. No. 35, Ex. 5.) Plaintiff also alerted her supervisor to the domestic violence to
12 which she was being subjected, stating that she was having medical problems related to domestic
13 violence, and needed time off. (Dkt. No. 35, Ex. 6 at 1–2.)

14       On October 13, 2014, Plaintiff's physician submitted a statement to Boeing that he
15 recommended Plaintiff stay home from work from September 23, 2011 until October 13, 2011.[2]
16 (Dkt. No. 36, Ex. 1.) That document also states that Plaintiff was "[a]ble to return to work FULL
17 DUTY without modification. Full Duty release to return to work date: 10-13-201 [sic]." (Dkt.
18 No. 36, Ex. 1 at 3.)

19       On October 14, 2011, Plaintiff exhausted her FMLA leave. (Dkt. No. 27 at 2, ¶ 7.) She
20 missed the next six consecutive days of work, without being granted leave. (Dkt. No. 27 at 2, ¶

---

[1] Plaintiff does not assert any gender discrimination or hostile work environment claims. These allegations are only relevant insofar as they show that she had a disability, and alerted Defendant to that fact.

[2] In her response, Plaintiff incorrectly states that the document recommended that Plaintiff stay home from work from September 23, 2011, to October 23, 2011. (Dkt. No. 33 at 8.) However, the document actually specifies October 13, 2011 as the relevant date. (*See* Dkt. No. 36, Ex. 1 at 1.) Moreover, the document states that Plaintiff was able to return to work full duty, without modification, on October 13, 2011. (Dkt. No. 36, Ex. 1 at 3.)

7.) Plaintiff returned to work for one day, on October 25, 2011, before missing the next six consecutive days, again without leave. (Dkt. No. 27 at 3, ¶ 8.) Each morning of the day she missed work between October 26 and November 2, 2011, she sent a text message to her supervisor, sometimes stating that she was feeling sick, and sometimes merely stating that she was taking time off. After those six consecutive absences, Defendant decided to terminate Plaintiff for excessive absences.

Plaintiff filed suit against Defendant, serving Defendant on September 13, 2013. (Dkt. No. 1 at 1.) On December 30, 2013, Plaintiff filed an amended complaint. (Dkt. No. 16.) On May 15, 2013, Defendant moved for summary judgment on all claims. (Dkt. No. 23.) Plaintiff responded, (Dkt. No. 33), and Defendant replied. (Dkt. No. 40.)

## II.     DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court must enter summary judgment if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of material fact exists, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Accordingly, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, neither "[t]he mere existence of a 'scintilla' of evidence," nor "mere allegation and speculation," create a genuine issue of material fact. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). Finally, "a non-movant's failure to respond" to arguments made in a motion for summary judgment does not constitute "a complete abandonment of its opposition to summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013). However, "the opposing party's failure to respond

to a fact asserted in the motion permits a court to 'consider the fact undisputed for the purposes of the motion.'" *Id.* (quoting Fed. R. Civ. P. 56(e)(2)).

### A.     FMLA Leave

The Family and Medical Leave Act ("FMLA"), entitles an employee to "a total of 12 workweeks of leave during any 12-month period," 29 U.S.C. § 2612(a)(1), if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1). Here, there is no genuine issue of material fact as to whether Plaintiff actually used all twelve weeks of her FMLA time by October 14, 2014. That fact is supported by the evidence submitted by Defendant. (*See* Dkt. No. 25 at 2–6, ¶¶ 6–7; Dkt. No. 25, Ex. A–R.) Plaintiff submits no evidence to suggest that she did not use up all her FMLA time.

Plaintiff also asserts a claim of FMLA interference, under the theory that Defendant considered the fact that Plaintiff took FMLA leave when deciding whether to terminate her. An employee may prevail on a claim of FMLA interference if the employee shows, by a preponderance of the evidence, "'that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her.'" *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135–36 (9th Cir. 2003) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001)).

Here, Plaintiff's sole evidence in support of her argument that Defendant took FMLA leave into consideration when making the decision to terminate her is a Corrective Action Memorandum ("CAM") issued in March 2011, several months before the termination decision. (*See* Dkt. No. 33 at 23–24.) In the CAM, Defendant stated that it was punishing Plaintiff for taking 79.9 hours of leave without pay, which included 49.4 hours of unexcused absences, and 43 hours of medically documented absences. (*See* Dkt. No. 26, Ex. 1.) Plaintiff contends that the medically documented absences may have included FMLA leave, but submits no evidence to support her argument. In contrast, Defendant submits an affidavit by the individual who prepared

the CAM, stating that she was aware that Plaintiff had used FMLA leave in the period leading up to the CAM, but "none of th[e] FMLA-related absences were the basis for her CAM, and none of the absence dates listed on her CAM were FMLA protected leave." (Dkt. No. 41 at 2, ¶ 5.) Instead, the term "MDA" refers to "non-FMLA medical documented absences." (*Id.*)

The Court finds that there is no genuine issue of material fact as to the FMLA claim or claims, and GRANTS summary judgment to Defendant as to those claims.

### B. Domestic Violence Leave Act

Under Washington's Domestic Violence Leave Act ("DVLA"), "[a]n employee may take reasonable leave from work, intermittent leave, or leave on a reduced leave schedule, with or without pay," for certain purposes related to domestic violence, such as seeking treatment for physical or mental injuries caused by domestic violence. RCW § 49.76.030. However, to take such leave, the employee must "give an employer advance notice of the employee's intention to take leave," RCW § 49.76.040(1), and an employer "may require that the request be supported" by verification of certain of the facts underlying the domestic violence allegation. RCW § 49.76.040(2). "As a condition of taking foreseeable leave, an employee shall give advance oral or written notice of the employee's intention to take leave under [the DLVA]." Wash. Admin. Code § 296-135-060(1). Moreover, "[i]f the employer has a stated policy that requires advance notice for foreseeable leave then the employee shall follow that policy." Wash. Admin. Code § 296-135-060(1)(a).[3] Here, Boeing's policy specifies that "[i]t is the employee's responsibility to self report their absence to their manager and/or HR Generalist, providing a written statement outlining the reason for the absence and the expected time away from work." (Dkt. No. 24, Ex. G, at 1.)

---

[3] Plaintiff does not argue that she was unable to give advance notice because of an "emergency or unforeseen circumstances due to domestic violence, sexual assault, or stalking," and even if she had, she did not give notice "no later than the end of the first day" that she took such leave. Wash. Admin. Code 296-136-060(2). None of the text messages she sent during the relevant period referenced any such domestic violence issues. (*See* Dkt. No. 24, Ex. D at 26–34.)

Plaintiff alleges that Defendant violated the DVLA, because she was being stalked and harassed by a man she had formerly dated. (Dkt. No. 16 at 2, ¶ 8.) Plaintiff conceded, during her deposition, that she never identified any specific date on which she would need time off from work on October 26, 2011 through November 2, 2011, under the DVLA. (*See, e.g.*, Dkt. No. 24, Ex. A, at 102–09, 159–63, 167, 245–56; Dkt. No. 24, Ex. D at 26–34.) Plaintiff submits no evidence to contradict that submitted by Defendant. Nor is there any evidence that Plaintiff submitted written notice, as required by Boeing policy. Because Plaintiff submits no evidence to contradict that submitted by Defendant,[4] the Court finds that there is no genuine issue of material fact as to whether Plaintiff submitted proper notice to Defendant of her taking Domestic Violence Leave. Accordingly, the Court GRANTS summary judgment to defendant on this claim.

### C.  Failure to Accommodate under the Washington Law Against Discrimination

Under the Washington Law Against Discrimination ("WLAD"), an employer has a cause of action "when the employer fails to take steps 'reasonably necessary to accommodate an employee's condition.'" *Johnson v. Chevron U.S.A., Inc.*, 244 P.3d 438, 443 (Ct. App. Wash. 2010) (quoting *Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 934 (Wash. 2004)). To qualify for a reasonable accommodation, "an impairment must be known or shown through an interactive process to exist in fact," and the impairment must have a "substantially limiting effect on the individual's ability to perform his or her job," or "the employee must have put the employer on notice of the existence of an impairment, and medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect." RCW § 49.60.040(7)(d).

---

[4] Indeed, Plaintiff does not even contest the arguments submitted by Defendant on this issue, though plainly "a non-movant's failure to respond" to arguments made in a motion for summary judgment does not constitute "a complete abandonment of its opposition to summary judgment." *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

ORDER
PAGE - 6

Plaintiff had been absent from work intermittently approximately one hundred times—more than a third of the total work days—between the beginning of 2011 and the time she was fired. (Dkt. No. 26 at 3, ¶ 9.) Moreover, she had had "a multi-year history of sporadic attendance at Boeing and would frequently miss work without giving any advance notice to her supervisors." (Dkt. No. 26 at 2, ¶ 5.) Some of these absences were "approved for medical or other reasons," but "other absences were unexcused." (Dkt. No. 26 at 2, ¶ 5.) A number of those absences were taken after Plaintiff alerted Defendant to a diagnosis of PTSD, depression, and anxiety in October of 2010. (Dkt. No. 35, Ex. 3 at 4.) Similarly, Plaintiff alerted Defendant, through a document filed by Dr. Christian Herter, that she was suffering "malaise, weight loss, suspect depression." (Dkt. No. 35, Ex. 5 at 2.) However, on October 13, 2011, Dr. Herter informed Boeing that, despite Plaintiff's diagnosis of depression, Plaintiff was "[a]ble to return to work FULL DUTY without modification" on October 13, 2011. (Dkt. No. 25, Ex. T at 1, 4.)

On October 14, 2011, Plaintiff exhausted her FMLA leave for 2011. (Dkt. No. 27 at 2, ¶ 7.) She missed the next six consecutive days of work, without leave. (Dkt. No. 27 at 2, ¶ 7.) Plaintiff returned to work for one day, on October 25, 2011, before missing the next six consecutive days, again without leave. (Dkt. No. 27 at 3, ¶ 8.) Each morning of the day she missed work between October 26 and November 2, 2011, she sent at least one text message to her supervisor, sometimes stating that she was feeling sick, and sometimes merely stating that she was taking time off.[5] After six days, Defendant terminated Plaintiff for excessive absences.

---

[5] On October 26, she asked to use a "few hours vacation" because she was "really sick, having a hard time breathing." (Dkt. No. 24, Ex. D at 26.) On October 27, she asked "to use vacation today" because she was "running a fever and c[ould] barely stand." (Dkt. No. 24, Ex. D at 28, 30.) That day, she was informed that she was required to return to work on Friday, or call in leave, (Dkt. No. 24, Ex. D at 29), and she also sent a text message stating that she was "using mda for tomorrow." (Dkt. No. 24, Ex. D at 30.) On October 28, she sent a text message stating that she was "using family leave instead of mda." (Dkt. No. 24, Ex. D at 31.) On October 31, she sent a text message stating that she was "using family leave 4hrs." (Dkt. No. 24, Ex. D at 31), and subsequently that she was going to the doctor that day and would not be in at all. (Dkt. No. 24, Ex. D at 32.) On November 1, she sent a text message stating that she was "using family leave 4hrs." (Dkt. No. 24, Ex. D at 32.) On November 2, she again stated that she was "using

It is an employee's burden "of giving the employer notice of the disability" at the time she requests leave. *See Goodman v. Boeing*, 899 P.2d 1265, 1269 (Wash. 1995). As Plaintiff notes, in requesting a reasonable accommodation, an employee need only "inform the employer of the need for an adjustment due to a medical condition using 'plain English and need not . . . use the phrase reasonable accommodation.'" *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), (quoting *EEOC Enforcement Guidance: Reasonable Accommodation and Undue Harship Under the Americans with Disabilities Act*, EEOC Compliance Manual (CCH), § 902, No. 915.002 (March 1, 1999), at 5440), vacated on other grounds 535 U.S. 391.

Here, Plaintiff's only stated basis for her disability is her "Depression/Anxiety/PTSD." (*See, e.g.*, Dkt. No 33 at 9.) However, Plaintiff's requests for leave do not reference that disability, and instead discuss her feelings of sickness, and a fever. Moreover, the only current information that Defendant had regarding her disability was that she was able to return to work full duty, without modification. Plaintiff argues that she gave notice to Boeing of her disability in October 2010 and March 2011, when she delivered documents diagnosing her with the relevant disability to Boeing. But, while those documents undoubtedly qualify as notice at some point, the request for accommodation itself must contain at least some reference to the disability to qualify as a request for accommodation related to that condition. *See Barnett v. U.S. Air, Inc.*, 228 F.3d at 1112 (in the context of the ADA, "[a]n employee requesting a reasonable accommodation should inform the employer of the need for an adjustment due to a medical condition"). After all, "[r]easonable accommodation . . . envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions." *Goodman*, 899 P.2d at 1269–70. An employee cannot alert the employer to a disability months or years earlier, make a request without referencing the disability, and then argue that the employer had a duty to engage in the interactive process due to

---

family leave 4hrs," (Dkt. No. 24, Ex. D at 33), but then to "[a]ctually make it 8." (Dkt. No. 24, Ex. D at 33.)

ORDER
PAGE - 8

the previous notice. Here, Plaintiff's requests referenced an entirely separate series of alleged medical problems, including a fever, feeling sick, and having a hard time breathing. It was not Defendant's duty to disbelieve Plaintiff's stated reason behind her request for leave and assume that it was rooted in her previously disclosed disability.

In effect, Plaintiff wants her months-earlier notice of her disability to qualify as a "notice" under the statute, but her October and November 2011 requests, for additional time off, to qualify as her requests for accommodation. But, while the Court agrees that the previous notice may have triggered a duty of reasonable accommodation, the Court also finds that Defendant engaged in the interactive process and satisfied its duties after receiving that notice. A Boeing representative discussed Plaintiff's absences with her, asked her "to provide Boeing with timely notice when she legitimately needed to be absent from work," and "sought information from her that might allow Boeing to 'excuse' her absences in accordance with applicable law and Boeing's policies." (Dkt. No. 32 at 2, ¶ 4.)  Nonetheless, for many of her absences, Plaintiff "did not provide [her supervisor] with any advance notice," and "generally did not provide [him] with any notice of when she would return to work." (Dkt. No. 31 at 2, ¶ 6.) And, indeed, Plaintiff was absent for "some or all of more than 100 work days" in 2011. (Dkt. No. 26 at 3, ¶ 9.) It was only during her final string of six consecutive unexcused absences that she was terminated. Thus, if, as Plaintiff argues, her previous discussion with Boeing of her mental health issues qualified as proper notice, Boeing engaged in the interactive process and gave her a reasonable accommodation[6] by giving her several months leave, intermittently and even when she gave no advance notice, over a ten month period.

Accordingly, the Court finds that there is no genuine issue of material fact as to Plaintiff's reasonable accommodation claim: Plaintiff's October and November 2011 requests for

---

[6] To the extent Plaintiff is arguing for an accommodation of allowing her to effectively take unlimited leave at any time without previous notice, the Court finds that such an accommodation is unreasonable.

ORDER
PAGE - 9

additional leave do not qualify as requests for reasonable accommodation, and Defendant satisfied its obligations under any previous request for reasonable accommodation. The Court GRANTS summary judgment to Defendant as to that claim.

### D. Discriminatory Discharge

Under Rule 56, a party may move for summary judgment, identifying each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). In her response, Plaintiff argues that she has submitted sufficient evidence to create a genuine issue of material fact as to a claim of discriminatory discharge because of her disability. (Dkt. No. 33 at 19–21.) Whether or not Plaintiff could have alleged a claim for discriminatory discharge—presumably under the WLAD—she did not do so.[7] Moreover, Defendant never sought summary judgment on such a claim, most likely because no such claim was asserted in the Amended Complaint. The Court declines to rule on whether there is a genuine issue of material fact as to a theoretical discriminatory discharge claim. Such a ruling would constitute an advisory opinion.

### E. Retaliation and Retaliatory Discharge

To establish a prima facie case of retaliatory conduct under Washington law, an employee must show that: "(1) she engaged in statutorily protected activity, (2) [an employer] took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action." *Washington v. Boeing Co.*, 19 P.3d 1041, 1048–49 (Wash. 2000).

First, the only relevant adverse employment action, *see Kirby v. City of Tacoma*, 98 P.3d 827, 833 (Ct. App. Wash. 2004) (defining adverse employment actions and noting that disciplinary and investigatory employment actions do not qualify), is Plaintiff's eventual

---

[7] Plaintiff's amended complaint requests relief under six theories: 1) wrongful termination in violation of the DVLA, (Dkt. No. 16 at 5–6); 2) failure to accommodate pursuant to the DVLA, (Dkt. No. 16 at 6); 3) retaliation for exercising her rights under the DVLA, (Dkt. No. 16 at 6–7); 4) failure to accommodate under the WLAD, (Dkt. No. 16 at 7); 5) retaliation under the WLAD, (Dkt. No. 16 at 7–8); and 6) a violation of the FMLA. (Dkt. No. 16 at 8.)

discharge, as that is the only adverse employment decision for which Plaintiff submits any argument or evidence. (*See* Dkt. No. 33 at 21–22.)

The only potential statutorily protected activity as a basis for the retaliation claims by Plaintiff are her requests for leave before her termination.[8] (*See* Dkt. No. 33 at 21–22.) Defendant, however, contends that Plaintiff was discharged because, after her requests for leave were denied, she twice missed work for six consecutive days in the month of October. (Dkt. No. 23 at 22.) It is Boeing policy to terminate employees after they have six consecutive absences. (Dkt. No. 26 at 4–5, ¶ 12; Dkt. No. 26, Ex. 2 at 2.)

The Court finds that there is no genuine issue of material fact as to the retaliation claims. Defendant had a consistent policy of terminating employees if there were six consecutive unexcused absences, and Plaintiff was fired immediately after her second string of six such absences in October 2011. Plaintiff's contention that Defendant's reason for her termination was pretextual, and that she was actually fired for requesting leave—rather than her absences—is supported by no evidence. Plaintiff argues that the timing of the discharge should weigh in favor of finding pretext. However, the discharge happened not only after Plaintiff requested leave from her supervisor, but also after those requests were denied and she had six unexcused consecutive absences. Plaintiff also argues that her supervisors threatened to fire her, which suggests a pretext; but her supervisors threatened to fire her only if she did not show up to work without leave. (*See* Dkt. No. 24, Ex. D at 28–29.) Indeed, it is not clear to the Court why an employer would retaliate against an employee for merely requesting leave. A reasonable juror could not find that Defendant's decision to terminate Plaintiff after those absences, in accordance with Defendant's policies, was pretextual.

Accordingly, the Court finds that there is no genuine issue of material fact as to the

---

[8] Plaintiff does not point to any authority showing that making a request for leave, when all leave has been exhausted, is a statutorily protected activity. Nonetheless, for the purposes of this motion, the Court will assume that there is such a statutorily protected right.

1 retaliation claims, and GRANTS summary judgment to Defendant on her claims of retaliation.

**III. CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 23) is GRANTED.

DATED this 7th day of July 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 12